**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sara Christensen, | No. CV-21-00007-TUC-JCH (EJM) |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Sara Christensen ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of a final decision by the Commissioner of Social Security (the "Commissioner"). (Doc. 1.) This matter was referred to Magistrate Judge Eric J. Markovich for Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 636(b)(1) and LR Civ. 72.1 and 72.2. (Doc. 16.) On June 22, 2022, Judge Markovich issued his R&R finding that the Administrative Law Judge ("ALJ") did not err and recommending that this Court affirm the Commissioner's decision. (Doc. 28 at 22.) Plaintiff objects to the R&R. (Doc. 29 at 7–10.) The Court overrules Plaintiff's objection, adopts the R&R in full, and affirms the Commissioner's decision.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed her initial application for Title XVI Supplemental Security Income on February 21, 2019, alleging disability beginning February 1, 2019.[1] (*See* Administrative Record ("AR") at 139.) Plaintiff alleged disability due to post-traumatic stress disorder

---

[1] The R&R explains that Plaintiff alleged an earlier onset date in her previous application which was denied. (*See* Doc. 28 at 2 n.1.)

("PTSD"), anxiety, and schizotypal personality disorder. (AR 68–69, 81–82, 139.)

On May 29, 2020, the ALJ issued his decision and concluded that Plaintiff was not disabled pursuant to the Social Security Act ("SSA"). (AR 55–63.) To be found disabled and qualified for Disability Insurance Benefits or Supplemental Security Income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(a) & 1382(a)(3)(A). The same five-step sequential evaluation governs eligibility for benefits under both programs. *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140–142 (1987). The five-step process requires the claimant to show (1) she has not worked since the alleged disability onset date, (2) she has a severe physical or mental impairment, and (3) the impairment meets or equals a listed impairment or (4) her residual functional capacity ("RFC") precludes her from doing her past work. If at any step the Commissioner determines that a claimant is or is not disabled, the inquiry ends. If the claimant satisfies her burden through step four, the burden shifts to the Commissioner to show at step five that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995); *see also Bowen*, 482 U.S. at 146 n. 5 (describing shifting burden at step five).

In this case, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity during the relevant period. (AR 57.) At step two, the ALJ found Plaintiff had "severe"[2] impairments including schizoid personality disorder, post-traumatic stress disorder, depression, and a generalized anxiety disorder with agoraphobia. (AR 57.) At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R., Pt 404, Subpt. P, App. 1. (AR 58.) Between steps three and four, the ALJ determined Plaintiff had the Residual Functional

---

[2] An "impairment or combination of impairments" is "severe" if it "significantly limits [the] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

Capacity[3] ("RFC"), "to perform full range of work at all exertional levels but with the following nonexertional limitations: she can perform simple, routine tasks and make simple work-related decisions and can tolerate only occasional interaction with supervisors, coworkers, and the public. (AR 59.) The ALJ also found, that "[t]ime off task can be accommodated by normal breaks." (AR 59.) At step five, based on the RFC and the testimony of the vocational expert ("VE"), the ALJ concluded Plaintiff could work as a Rental Storage Attendant, Mold Machine Attendant, or Marker. (AR 62–63.) Accordingly, the ALJ concluded that Plaintiff was not disabled since February 21, 2019, the date she filed her application. (AR 63.) Plaintiff requested review before the Appeals Council, which was denied on July 24, 2020, thereby making the ALJ's decision the final decision of the Commissioner. (AR 1–10.) Thereafter, Plaintiff timely filed the instant action. (Doc. 1.)

Judge Markovich issued his R&R finding that the ALJ did not err. (*See* Doc. 28.) Plaintiff objects.[4] (Doc. 29.) With respect to Dr. MaryAnne Belton's, Psy.D., ("Dr. Belton) medical opinion, Plaintiff argues the ALJ failed to address "supportability" and "consistency" factors consistent with the new guidelines and failed to articulate which parts from the medical opinion he found more or less persuasive. (Doc. 29 at 2–8.) Plaintiff further argues that the R&R overlooks this error and impermissibly relies on reasons never raised by the ALJ in violation of *Pinto v. Massanari*. 249 F.3d 840, 847 (9th Cir. 2001); Doc. 29 at 8. Plaintiff also argues that the R&R erred by finding the ALJ conducted a full and fair hearing. (Doc. 29 at 8.) Specifically, Plaintiff contends that the ALJ failed to address ambiguities regarding Plaintiff's ability to perform work, and the ALJ skirted his duty to resolve those ambiguities by failing to question the unrepresented Plaintiff. (Doc.

---

[3] "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007). A plaintiff's residual functional capacity is what they can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155–56 n.5–7 (9th Cir. 1989).

[4] Plaintiff did not object to the R&R's factual summary. (*See* Doc. 31.) The Court adopts that summary in full. (Doc. 30 at 1-13.)

29 at 8–10.) Plaintiff requests this Court reject the R&R, overturn the denial of her claim, and remand the matter for further proceedings. (Doc. 29 at 11.)

**II.    STANDARD OF REVIEW**

**A.  Review of the Report and Recommendation**

In reviewing a Magistrate Judge's R&R, "[a] judge of the court shall make a de novo determination of those portions of the report ... to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b); *United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989).

**B.  Review of the ALJ's Decision**

An ALJ's decision may be reversed only when it is unsupported by substantial evidence or constitutes harmful legal error. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation and citation omitted). "An error is harmless if it is inconsequential to the ultimate nondisability determination[.]" *Treichler v. Comm'r of Soc., Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2015) (internal quotation and citation omitted). Put differently, "an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Molina v. Astrue*, 674 F.3d 1004, 1115 (9th Cir. 2012) (internal quotation marks and citations omitted), *superseded by regulation on other grounds*. While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

**III.   MEDICAL OPINION EVIDENCE**

**A.  Dr. Belton's Opinion**

At the state agency's request, Dr. Belton conducted Plaintiff's psychological

evaluation on May 13, 2019. (AR 60, 337.) Dr. Belton's diagnostic impressions included schizoid personality disorder and PTSD. (AR 341). Dr. Belton noted that Plaintiff reported a childhood history involving sexual and physical abuse, periods of living in isolation, and a series of adulthood traumatic events in 2012. (AR 338–39.) She did not note any evidence showing Plaintiff lacked basic comprehension skills. (AR 340.) As to task instructions, Plaintiff did not require repetition or rephrasing. (AR 340.) Plaintiff demonstrated a coherent and intact thought process, her attention, cooperation, and effort levels appeared appropriate and consistent. (AR 339–40.) And Dr. Belton observed that Plaintiff put forth good effort and was cooperative throughout the evaluation. (AR 340.)

Dr. Belton also filled out a psychological medical source statement in which she stated that Plaintiff had a current psychological diagnosis and associated limitations which were expected to last 12 continuous months from the date of her exam. (AR 343.) Dr. Belton provided her "own substantiated medical findings" about Plaintiff's abilities. Regarding Plaintiff's understanding and memory, Dr. Belton noted, "[Plaintiff] can comprehend and carry out simple directions when her symptoms are not active. Yet, as she experiences exacerbation of affective distress, she will have difficulty with carrying out and remembering multi-step or complex directions." (AR 343.) Addressing Plaintiff's sustained concentration and persistence, Dr. Belton opined, "[g]iven current experience of affective symptomatology, [Plaintiff's] ability to focus and attend to novel stimuli will be variable at the present time dependent upon exacerbation of her conditions. (AR 343.) Dr. Belton opined that Plaintiff struggled with "social reciprocity," opining that "[w]hile she demonstrated appropriate eye contact with the examiner, her affect was dysphoric, and she was tearful throughout the evaluation." (AR 344.) Dr. Belton offered that Plaintiff would have challenges with adhering to social norms and rules in interaction. (AR 344.) Regarding Plaintiff's ability to adapt to changes, Dr. Belton opined that Plaintiff is likely able to take necessary precautions when faced with a new situation but is likely to demonstrate difficulty making adjustments and changes needed within an environment quickly. (AR 344.)

**B. Legal Standard**

Because Plaintiff filed her application after March 27, 2017, medical source opinions are evaluated under the revised regulations. Under the revised regulations, an ALJ's decision to discredit any medical opinion "must simply be supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). There is no "inherent persuasiveness" in either a claimant's own medical sources or government consultants. *Id.* at 791 (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416)). Instead, the ALJ must consider all the medical opinions in the record and evaluate each medial opinion's persuasiveness using factors. 20 C.F.R. § 416.920c. The two most important factors are "supportability" and "consistency." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must articulate "how [he or she] considered the supportability and consistency of factors for a medical source's medical opinions... in [his or her] decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2).

With regard to supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions ... will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). As to consistency, the "more consistent a medical opinion(s) is with the evidence from other medical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ is not required to explain how she considered other factors, unless the ALJ finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. See 20 C.F.R. §§ 404.1520c(b)(3), 416.1520c(b)(3).

Even if there is some error, the Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. Courts look to the whole record to determine whether an error alters the outcome of a case. *Id.* at 1115. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's

determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (internal citation omitted).

### C. Analysis

Plaintiff contends that the ALJ improperly rejected Dr. Belton's medical opinion in a conclusory manner and did not adequately discuss the supportability and consistency factors as required under the regulations. (Doc. 29 at 4–5.) Furthermore, Plaintiff argues that the ALJ failed to specify which parts of the medical opinion he found to be persuasive or non-persuasive, an omission which Plaintiff characterizes as "significant error." (*Id.* at 8.) In response, the Commissioner argues that the ALJ's articulation was sufficient and there is no basis to overturn the ALJ's decision. (Doc. 30 at 3–4.)

As to Plaintiff's mental health limitations, the ALJ found Plaintiff had the ability to perform a full range of work at all exertional levels with the following limitations:

> [s]he can perform simple, routine tasks and make simple work-related decisions. She can tolerate only occasional interaction with supervisors, coworkers, and the public. Time off task can be accommodated by normal breaks.

(AR 59.)

In assessing Plaintiff's mental limitations, the ALJ noted:

> In May 2019, the claimant was referred to Dr. MaryAnne Belton, Psy.D., for an evaluation by the state agency (2F). On examination, the claimant was alert and oriented; her presentation was sad and dysphoric. She was tearful throughout the interview; however, she was noted to be active, friendly, and engaged throughout the evaluation. No deficit was noted in her comprehension skills. Her persistence was intact. She did not endorse or present with magical thinking, unusual perceptual experiences, odd speech or thinking patterns, and/or eccentric behavior. She repeated three nouns accurately and recalled all words following a brief distraction. She received five out of five points for spelling 'world' backward. She identified two common objects correctly and repeated an idiomatic phrase without errors. Similarly, she completed a three-stage command and copied a pair of intersecting pentagons correctly. Lastly, she wrote a brief and legible sentence.

> She has exhibited the following signs and symptoms: anxiety, exposure to trauma, triggers, nightmares, intrusive thoughts, flashbacks, irritability, depression, decreased energy, sleep disturbance, diminished interest or pleasure, weight gain, feelings of worthlessness, difficulty concentrating, recurrent thoughts of death, and fleeting suicidal ideation (1F/1-2; 2F/1-2; 3F/2, 6-7, 10; 4F/2, 11, 19, 27).
>
> Mental status examinations have varied, but generally demonstrated alertness, orientation, friendly, and cooperative demeanor, with good eye-contact, appropriate behavior, good understanding, good communication, casual but appropriate dress, variable grooming and hygiene variable mood and affect, appropriate judgment and insight, intact memory, recall, comprehension, attention, and concentration, as well as a generally coherent thought process with coherent thought content (1F/2; 2F/3-5; 3F/2, 7, 10-12, 14; 4F/2, 8, 11-12, 15, 17, 19-20, 22, 25, 27-28).[5]

(AR 60–61.)

The ALJ was "somewhat but not entirely persuaded by" Dr. Belton's medical opinion finding:

> [Dr. Belton] based her opinion on a one-time examination of the claimant, and whose opinion is not entirely supported by or consistent *with the overall evidence of record noted above*. For example, she demonstrated a dysphoric affect, was tearful throughout the evaluation, and reported 'needing to be alone and away from people,' she was able to demonstrated [sic] appropriate eye contact with the examiner, and *the overall evidence of record generally demonstrated* alertness, orientation, friendly, and cooperative demeanor, with good

---

[5] This citation includes a range of neurological, psychological, and behavioral observations between January 24, 2019, and April 24, 2020. Specifically:
  1F/2: Northwest Allied Quickmed office treatment records from 1/24/19 (AR 331);
  2F/3–5: Dr. Belton's Consultation Report dated 5/13/2019 (AR 339–41);
  3F/2, 7, 10–12, 14, Banner Health Behavioral Health Intake on 9/18/2019 (AR 352, 355–57, 359); and
  4F/2, 8, 11-12, 15, 17, 19-20, 22, 25, 27-28: Arizona Oncology Associates progress notes dated 4/24/2020, 3/09/2020, 11/06/2019, 10/30/2019, 10/29/2019, 10/02/2019, 9/25/2019, 9/24/2019, and 8/30/2019 (AR 375, 378–79, 382, 384, 389, 392, 394–95.).

>eye-contact, appropriate behavior, good understanding, and good communication.

(AR 61) (emphasis added).

As an initial matter, the ALJ thoroughly reviewed the evidence in the record to support his RFC determination and noted the supportability and consistency factors in evaluating Dr. Belton's opinion. Specifically, the ALJ considered neurological, psychological, and behavioral observations from other health examinations—between January 24, 2019, and April 24, 2020—and, "the overall evidence of record generally demonstrated [Plaintiff's] alertness, orientation, friendly, and cooperative demeanor, with good eye-contact, appropriate behavior, good understanding, and good communication." *Compare* (AR 61) *with* (AR 60) ("Mental status examinations have varied, but generally demonstrated alertness, orientation, friendly, and cooperative demeanor…"). The ALJ concluded that Dr. Belton's observations lacked support, or were otherwise inconsistent, with those observations which showed normal mental status. (AR 61.) The ALJ's paragraph, although brief, referenced his earlier discussion to support his skepticism regarding Dr. Belton's examination findings.

Moreover, nothing in the record supports Plaintiff's conjecture that the ALJ was required to accept Dr Belton's "unique perspective" on Plaintiff's mental limitations based on a single examination. (Doc. 29 at 5.) Nor did Dr. Belton opine that Plaintiff's impairments precluded *any* interactions with supervisors, coworkers, or the public. (AR 344) (Dr. Belton ultimately concluded, "[w]ith report of 'needing to be alone and away from people,' it is offered that she will have challenges with adhering to social norms and rules of interaction.") Plaintiff urges an even more restrictive interpretation, (Doc. 29 at 6), and ignores that the RFC seemingly incorporated a stricter limitation to Plaintiff's benefit. (Doc. 59) (finding "[Plaintiff[ can tolerate *only occasional interaction* with supervisors, coworkers, and the public.") (emphasis added). Dr. Belton's limitations, and its impact on the RFC, are subject to differing rational interpretations. Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld. *Shaibi*

- 9 -

*v. Berryhill*, 883 F.3d 1102, 1108 (9th Cir. 2018) (internal citation and quotation omitted); *see also Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (In Social Security cases, federal courts "are not triers of fact" and a court "may not substitute its judgment for that of the [ALJ].") Plaintiff offers an alternative interpretation, which alone, is insufficient to sustain an objection. As such, the ALJ reasonably found Dr. Belton's opinion to be somewhat but not entirely persuasive. (AR 61.)

Plaintiff also argues that the ALJ's RFC failed to adequately account for the mental limitations by finding, "time off tasks can be accommodated by normal breaks." (Doc. 29 at 7–8.) The RFC is the most a person can do, despite her physical or mental impairments. *See* 20 C.F.R. § 404.1545. The RFC must capture the limitations in the medical testimony. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.* The limitations identified in the Paragraph B criteria "are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p. In other words, moderate limitations in the paragraph B criteria domains do not require the ALJ to assess a specific degree of functional limitation in the RFC. *Collingswood-Bonse v. Colvin*, No. 6:13-CV-01646-AA, 2015 WL 853063, at *5 (D. Or. Feb. 24, 2015). At the hearing, the VE explained that constant and repeated tardiness totaling more than 16 hours a month would likely lead to termination. (AR 48–49.) Additionally, the ALJ considered time off task issues, which the VE stated only eight percent of time off task would be acceptable. (AR 48.)

Here, Plaintiff argues that the ALJ never explained how Dr. Belton's opinion—which noted Plaintiff's "ability to focus and attend to novel stimuli will be variable at the present time dependent upon exacerbation of her conditions" (AR 343)—could be accompanied by normal breaks during the workday. (Doc. 29 at 8.) Importantly, Plaintiff did not object to the moderate limitations in the Paragraph B criteria noted by the ALJ. As previously indicated, the ALJ considered and even included some of the more restrictive

limitations into the RFC. (AR 58.) An ALJ is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001). Although the vocational expert testified that a person who misses two more days per month as well as one who is off-task at least eight percent of the time would be unable to maintain employment (AR 48–49), there is no substantial evidence that Plaintiff was subject to those particular restrictions. Dr. Belton did not articulate that Plaintiff's limitations would result in any specific number of days missed from work or specific off-task time, even when Plaintiff's conditions were exacerbated. The remaining medical evidence does not show that Plaintiff would miss at least two days of work per month, and Plaintiff offers no other medical opinion showing she would be off-task at least eight percent of the time. Thus, the ALJ did not err.

The ALJ properly considered all the relevant evidence in determining Plaintiff's mental limitations, including Dr. Belton's medical opinion.[6] For the above reasons, the Court finds that the RFC determination is supported by substantial evidence.

## IV. FULL AND FAIR HEARING

### A. Standard

The ALJ has a duty to fully and fairly develop the record and to assure that the claimant's interests are considered. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal citation and quotation omitted). The ALJ must be especially diligent when the claimant is not represented and "scrupulously and conscientiously probe into, inquire of, and explore all the relevant facts." *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978). However, "an ALJ's duty to develop the record further is triggered only when there is

---

[6] Citing to *Pinto v. Massanari*, Plaintiff also argues that the R&R upholds the ALJ's decision based on a reason not supplied by the ALJ. *See* 249 F.3d 840, 847–48 (9th Cir. 2001) (holding that a district court may not affirm the ALJ's decision on a ground that the ALJ did not invoke in making his decision); Doc. 29 at 6. According to Plaintiff, the R&R relies on a "qualitative" versus "quantitative" explanation to excuse the ALJ's failure to specify which part of Dr. Belton's opinion he found persuasive and non-persuasive. (Doc 29 at 8.) Plaintiff is mistaken. The R&R merely described the difference between an examination finding, rather than a specific functional limitation assessed by a medical source, with respect to characterizing Plaintiff's argument. (Doc. 28 at 19) ("That Plaintiff interprets Dr. Belton's statement as requiring a greater than occasional limitation to interaction with supervisors, coworkers, and the public does not make the ALJ's assessment of Dr. Belton's opinion wrong, nor does it require a finding of error in the RFC assessment.") The R&R did not make an improper recommendation.

ambiguous evidence or when the record is inadequate for proper evaluation of evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001). Ultimately, it is the plaintiff's burden to prove that he or she is disabled. *Id.* at 459.

### B. Analysis

Plaintiff's argument presupposes her interpretation regarding Dr. Belton's medical opinion. She argues that the ALJ failed to conduct a full and fair hearing by failing to ask her whether she thought she could work on a regular and continuous basis by not missing more than 2 days of work per month, be productive 92% of the time, and occasionally interact with supervisors, coworkers, and the public. (Doc. 29 at 8.) According to Plaintiff, the ALJ failed to resolve the ambiguities between the RFC findings and Dr. Belton's medical opinion. (*Id.* at 9.)

Here, the ALJ had sparce medical records but there is no evidence of missing reports or ambiguous conclusions. Moreover, the ALJ had no duty to develop the record by bolstering the favorable medical testimony. *See Mayes*, 276 F.3d at 459–60 ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."). The ALJ prepared a reasoned opinion in which he examined Plaintiff's limited medical history and considered the evidence presented. To put an additional burden on the ALJ to discover the root of every subjective complaint, even if unsupported by the overall medical evidence, would improperly shift the Plaintiff's burden to prove her disability. *See id.* As such, the ALJ did not err.

…

**V.     ORDER**

**IT IS ORDERED** that:

(1) Plaintiff's objections to the R&R (Doc. 29) are **OVERRULED**.

(2) The R&R (Doc. 28) is **ACCEPTED AND ADOPTED IN FULL**. The Commissioner's decision to deny Plaintiff's claim for disability benefits is affirmed.

(3) The Clerk shall enter judgment accordingly and terminate this action.

Dated this 1st day of September, 2022.

Honorable John C. Hinderaker
United States District Judge